GEORGE C. BESTOR, plaintiff in error, *v.* ELIHU N. POWELL *et al.*, defendants in error.

*Appeal from Peoria.*

In an action of Ejectment, the plaintiffs were sworn and stated that a certain deed from the County Commissioners to one A. was not, and never had been in their possession, and that they did not know where it was; that they were unable to procure it, and that they had sent a messenger to A. for the deed. The messenger was then sworn, and stated that he called on A. for the deed, who replied that the deed was not in his possession, and that he had not seen it for a long time. The plaintiffs then introduced the record of deeds of the county, to show the conveyance from the county to A.: *Held*, that under the circumstances, the secondary evidence was properly admissible, both at common law and under the statute.

A deed purporting to be "between the County Commissioners of the County of Peoria, and State of Illinois, of the first part, and James C. Armstrong, of the second part," &c., signed and sealed by three individuals, and acknowledged before the County Commissioners' clerk in open Court, who certified, under seal of the Court, that they are the "legal acting Commissioners," was *held* to be the deed of the individuals in their official capacity, and as such, admissible in evidence.

A deed of land sold for taxes under the Revenue Law of 1839, made either by the officer making the sale, or his successor in office, is good and valid under the statute.

A sale of lands for taxes made on the second Monday succeeding the first day of the term at which the judgment against the lands was rendered, was *held*, to have been made on the day fixed by the true interpretation of the Act: *Held*, also, that a sale made on the second Monday succeeding the adjournment of the term would not be objectionable.

Under the Revenue Law of 1839, before any person claiming adversely to a tax deed can be admitted to defeat it, he must show that he, or the person under whom he claims, had title to the land at the time of the sale for taxes.

EJECTMENT in the Peoria Circuit Court, brought by the appellees against the appellant, and heard at the May term

1845, before the Hon. John D. Caton, when a judgment for possession was rendered in favor of the plaintiffs below.

*O. Peters,* for the appellant.

I. The record of the deed from the County Commisioners to Armstrong was inadmissible, and ought to have been excluded by the Court.

1. The deed itself was the best evidence. The record can only be used, first, where the original is lost, or secondly, where it is not in the power of the party wishing to use it, and this to be made to appear to the satisfaction of the Court. Gale's Stat. 153, §17.

The plaintiffs below did not show sufficient diligence to entitle them to secondary evidence. Armstrong lived in Peoria; plaintiffs did not apply to him; they requested Mr. Metcalf to ask Mr. Armstrong for the deed, but he did not make known the object of the inquiry, or that the deed was wanted as evidence. Mr. Metcalf was a stranger to the title and to the transaction; he might well refuse him the information sought.

Armstrong was a competent witness, and could have been compelled to produce the deed under a *duces tecum.* The notice to defendant was nugatory. He claimed no title under Armstrong; there was no presumption that he had the deed. Armstrong was the grantee, and there was no conveyance from him, so that he would be presumed to have the deed, or to have it under his control.

2. The deed itself would not have been evidence of title; it was not such a deed as would transfer the title of the county to Armstrong.

The Patent, and the special Act of Congress vested the land in the county; and though the grant was to individuals as County Commissioners, yet by our own statute, a fee simple was vested in the county by the grant from the U. S. 2 Public Land Laws of U. S. 362; Gale's Stat. 158, § 2.

It is not denied that County Commissioners can make deeds to convey lands belonging to the county; but without

this statute they would have no such power. Gale's Stat. 156, § 2; *Williams* v. *Claytor*, 1 Scam. 505.

But the conveyance must be by them *as County Commissioners.* This deed purports to be an indenture between the County Commissioners and Armstrong; but Coyle, Hamlin and Tharp are not described in the deed, nor do they execute the deed as County Commissioners.

What purports to be a certificate that they were County Commisioners, is a record of the original without any preliminary proof of its loss; besides there was better proof, to wit: the records of the County Commissioners' Court, that they were County Commissioners.

The deed or grant should have been *in the name of the county.* The title was in the county as a public corporation; the act which divests the county of its title must be a corporate act; a corporation can only act by its officers, and its common or public seal. The signatures of its officers, with the usual scrawls attached to their names, do not make it the deed of the corporation; and though the Commissioners may convey, yet the mode of conveyance is not changed, but is left as at common law. *Kinzie* v. *Chicago*, 2 Scam. 187.

II. All the evidence offered to show title under the tax sale of 1841 was inadmissible, and showed no title in the plaintiffs.

1. Because the sale was made within a shorter period of time, after the rendition of the judgment, than was required by law.

The record shows that the sales were commenced during the term at which the judgment was rendered, and completed before the second Monday thereafter.

By the Act of 1838–9, the collector is to give notice that on the "second Monday" next "succeeding the term," he will sell, &c. "Succeeding the term" cannot mean, during the term. Laws of 1838–9, 13, § 26; Ib. 24, § 5.

"Term" is from the Latin *"terminus,"* a bound, a limit; says Cicero, *"Est inter eos non de terminis, sed tota possessione, contentio."*

In law it hath two significations or applications;

1. The whole time or duration of an estate. 2. The time during which the Court is holden open for the trial of causes; Webster's Dic. word "term." The Latin *terminus*, and the Greek word from which the Latin is derived, signify also a termination or ending.

The phrase "next succeeding the term," can only mean or refer to the time after the close of the term.

By our law, all judgments are considered as rendered on the last day of the term, at least so far as to have judgment liens attach from that day only; and while the term continues, all judgments and decrees are under the control of the Judge. Gale's Stat. 389, § 1; *Frink* v. *King*, 3 Scam., 149. During the term, all the proceedings are in the breasts of the Judges and alterable. 3 Dane's Abr. ch. 95, art. 2, § 2.

It is not to be presumed, that the legislature intended that the lands should be sold during the term, when the judgment had not become forfeited, and when owners might appear to contest. At least, no such inference should be drawn unless the language is clear and explicit.

But all doubt should be removed by reference to a subsequent section of the same Act, which provides, that the clerk of the Circuit Court shall "within five days after the adjournment of said Court," make out a copy of the collector's report, with the order of the Court thereon, and deliver the same to the sheriff, "and this shall constitute the process on which all lands shall be sold for taxes;" and the sheriff shall thereupon cause said lands to be sold on the day specified in the notice given by the collector for the sale of the same," &c. This language clearly imports that the sale is to be after the adjournment; and if after, then the second Monday after is the earliest day a sale can be had.

The term commenced April 15th, and the execution, or order of sale, issued on April 24th; the term closed on April 28th, 1841. The sales commenced on the 26th, and terminated on the 29th; so that no Monday intervened between the close of the term and the day of sale. Laws of 1838–9, 14, § 31.

III. The deed of Smith Frye to Underhill, dated May

4th, 1843, conveyed no estate. Orr, the predecessor of Frye, made the sale for the taxes, and he only could give a deed to pass the title under the tax sale.

The general principle of law is, that the officer who makes the sale is to make the deed; that the officer who has received and levied an execution, must perfect it, by doing every act required under, or by virtue of the execution; and in case of ordinary judgments and sales on execution, the duty of the sheriff is extended beyond the return of process, and the sale and such subsequent acts are considered as one entire thing. *Elkin* v. *The People*, 3 Scam. 308.

A sale for taxes is predicated upon a judgment, and is made by virtue of an execution, though peculiar in its form, as much as any other sheriff's sale. The judgment is *in rem;* the execution is *in rem;* and the law having required the sheriff to make the sale, the same rule as in ordinary cases will apply, unless the legislature has prescribed a different one. The analogies of the common law apply, and its principles are to govern, in this, as well as in other cases of sales upon execution. *Elkin* v. *The People*, above cited.

Has the Revenue Law of 1839, directed a different mode? The forty second section provides, that the sheriff shall make a deed to the purchaser. But the sale and every thing subsequent necessary to perfect the act being one entire thing, the legislature could only have contemplated the sheriff who made the sale, he continuing to be sheriff for the purpose of completing what he has begun. And this construction is placed beyond a doubt by the subsequent part of the same section, in prescribing the form of the deed. It recites: "Whereas, on, &c., I, sheriff, &c., by virtue of a precept *to me directed*, &c. Now, therefore, I, sheriff as aforesaid, &c., grant," &c. There is no clause or provision for any alteration of this form, or to insert a clause to shew that the sale was made by his predecessor; the language is peremptory—"deeds executed by the sheriff shall be in the following form." As this is a statute conveyance, and against common right, the statute must be strictly pursued.

Nothing is to be presumed except what the statute has pre-

sumed, or required; more than the statute has required, would be too much; less than the statute has required, would be insufficient.   These principles are fully recognized in the case of *Garrett* v. *Wiggins*, 1 Scam. 336–8.

*E. N. Powell*, for the appellees.

The Opinion of the Court was delivered by

SCATES, J.*   *Ejectment* against the plaintiff in error, to recover a lot in the town of Peoria.   The defendants deduce two chains of title, one by Patent from the United States to the county of Peoria, and by conveyance from them to James C. Armstrong, and by purchase under an execution issued on a judgment against him in favor of Isaac Under-hill.

The other chain of title is by purchase under an execution issued on a judgment for the taxes of 1840, against the lot, and in favor of the State.

The plaintiff objected to all the evidence below, but confines his objections here to the conveyance by the County Commissioners to Armstrong, and to the proceedings on the sale for taxes.

The plaintiff offered to prove that Susan Buxton had claimed the premises as owner ever since 1838, and had occupied them by herself or tenants; that the defendant entered and took possession in 1841 under a lease from her and had occupied ever since, and that he had not had notice or demand to quit or give up the premises.   This was objected to and excluded, and very properly we think.   If the defendants showed no title, it was unnecessary to prove this possessory one.   If they showed title, this one was of no moment.   So, in no event, does it appear that this proof was relevant, or important, upon the face of this record.

The first objection I shall notice, was taken to the admission in evidence of the record of deeds of the county, to show the conveyance from the county of Peoria to Arm-

---

* WILSON, C. J., and LOCKWOOD, J., did not sit in this case.

strong. For a foundation for the introduction of this secondary evidence the defendants were both sworn, and stated that they had not, and never had the possession of said deed, and did not know where it was; that it was out of their power to procure it; and they had sent Mr. Metcalf to Armstrong to get it from him, supposing he had it. Mr. Metcalf was sworn, and stated that he had called upon Armstrong for the defendants to get the deed; that Armstrong said he had not had the deed for a long time, and did not know where it was. Armstrong lived in Peoria at the time of trial. Plaintiff had been duly notified to produce, and did not. The secondary evidence was admitted under this proof, and we think well enough. Parties are required to make diligent search and inquiry; this inquiry was made of the very person whose muniment it was, and in all probability had it, if in existence. His answer to the inquiry is competently proven by the witness who made it. It was not necessary to call the person himself, unless circumstances should raise the suspicion that the answer was untrue, or that the deed was probably in existence, and could be had upon proper search. Here the answer was positive and unequivocal, that it was not in his possession, and he knew not where it was. Under these circumstances, he being entitled to its custody, it is presumable it was lost or destroyed. But independent of the principle of common law, the statute has made the record of the deed evidence, whenever it shall appear to the satisfaction of the Court that the original is not in the power of the party wishing to use it. Gale's Stat. 153, § 17.

The next objection is to the deed from the county to Armstrong, on the grounds that it was not made by the county, and is not under the seal of the county. I think the objection is not well taken. The deed purports to be "between the County Commissioners of the county of Peoria, and State of Illinois, of the first part, and James C. Armstrong, of the second part, *Witnesseth,* That the said Commissioners, party of the first part, for and in consideration," &c., and concludes, "In testimony whereof, the party of the first part have hereunto set their hands and seals." (Signed,) "John Coyle, [L.s.] Orin Hamlin, [L.s.] Andrew Tharp, [L.s.]

The acknowledgment of the deed was taken by the County Commissioners' clerk in open court, certifying that they are the "legal acting Commissioners," with the seal of the Court, authenticating the acknowledgment.

This is a corporation, and it possesses a seal, and it is true that they must authenticate their solemn acts of record, and by deed, by the seal of the corporation.

But the clerk, not the Commissioners, is the keeper of the seal. What they order as a Court, he will enter and authenticate with the seal. But what they do *in pais*, he cannot, otherwise than as it is ordered of record, or acknowledged before him, where he is allowed to take such acknowledgment, as in this case. They have no right to take, or use the seal. No one, I imagine, would contend, that the clerk could sign and seal the deed for the Court. They may sit in open Court, and make, seal, and acknowledge the deed, or they may make and seal it *in pais* and acknowledge it before the clerk. In either way, the corporate seal to the attestation of acknowledgment will satisfy the requirements and principles of law, requiring corporations to act under seal. I do not perceive how they could well get the seal to it in any other way, without dispensing with their own signatures, which I think to be necessary. The individual names of the members of the Court are signed, with their private scrawls, without annexing an official description. But the introductory part of the deed has fully described the grantors, and the witness to the deed is made by the "party of the first part." We know by law, that the corporation is represented by official persons, and these representatives of the corporation have officially, as such, acknowledged it. This is all proper, and well enough. The Patent in this case issued to the "County Commissioners," naming the individuals then filling the office, and their successors in office. The decision in 1 Scam. 504, so far as intimation was thrown out by the Court that it should have been in the name of the "county," therefore, does not apply. The Patent in that case was to the "county;" in this, to the "County Commissioners." But the decision itself disposes of this objection under the statute. Gale's Stat., 156, § 2; see, also,§ 158.

Several objections have been taken to the title derived under the tax sale. The first that I will notice is, that the successor of the sheriff who made the sale, executed the deed. At the time of making this deed, there was a statute allowing the successor of the sheriff, or other officer, who had made sales of real estate, to execute the deeds, but did not in express terms include deeds made by sheriffs on sales for taxes; nevertheless, as it is an official Act, connected with the office, and not a personal trust reposed in the man, I regard the statute as only declaratory of what the law was before its passage; and it is a general declaratory Act including other officers, whose duty it was to sell real estate. R. L., 109, § 30. A deed, therefore, made either by the officer making the sale, or his successor in office, would be good and valid under the statute as to this objection, as may be seen by reference to the different provisions of the Acts, and the decisions of this Court. Gale's Stat. 158, § 2; 3 Scam. 208.

Another objection to the sale was, that it was made on the second Monday succeeding the first day of the term at which the judgment was rendered, instead of the second Monday succeeding the adjournment.

We are of opinion, that the former day is the one fixed by the true interpretation of the Act, but we can see no objection to a sale made on the latter day. We find the language of the Act has given rise to a diversity in the practice. This has, however, been settled by the last Revenue Act, Rev. Stat. 444, § 47, which has fixed the day of sale for the fourth Tuesday next succeeding the commencement of the term. The direction in the statute, requiring the clerk to make out a list and transcript of the order and the lands within five days after the adjournment, it is contended, precluded the latter construction, as where Courts sit several weeks, as is the case in some counties, the second Monday from the commencement would arrive before the adjournment, and so the sale would be required to be made before the transcript is required to be issued.

By fiction of law the term is one day, but as the judgment and proceedings on these applications are entered and kept in a separate record, without resorting to the fiction, the

adjournment may be presumed to follow immediately upon the entering this judgment, as to this proceeding.

But these nice disquisitions, either the one way, or the other, are in no wise valuable, in interpreting and laying down rules for common practical business affairs. They should not be incumbered by too many and nice distinctions, else it will be found impracticable ever to carry into effect the plain intentions of the law-giver; and they are a sale of the lands to raise the taxes and secure the revenue when the owner neglects payment. The plainer and more simple the rule, the more easy it is to be followed and complied with. I know that the rule of strict construction applies to the exercise of these naked powers; but we cannot indulge invention in raising a thousand subtleties that would never enter the mind, or imagination of a ministerial officer pursuing the main object, the raising a just proportion of taxes by sale of the land. The object of the notice of the day of sale is to secure bidders and competition. Where the day becomes known to the community, by fixing upon the one day or the other the main object is attained, and the owner is, as to this object secured in every right he can demand. Still, if this view of the subject cannot be relied on, another objection arises to the plaintiff's taking advantage of the fact upon this record. By the forty third section of the Act of 1839, (Laws of 1838–9, 18,) the deed is made conclusive evidence "that the sale was conducted in the manner required by law," and before any person claiming adversely to this title can be permitted to defeat it, he is required by the same section, among other things, to show that he, or the person under whom he claims, had title to the land at the time of sale. This the defendant has not done, otherwise than by offering to show possession for two or three years before the sale, which is not admissible.

We are of opinion, therefore, that there is no error by reason of any objection that has been urged, for the former title would be sufficient to entitle the defendants to recover without the latter. Judgment affirmed with costs, and a writ of possession awarded.

*Judgment affirmed.*